IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0943-12






BENJAMIN KNIGHTEN BURCH, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 Hervey, J., filed a concurring opinion in which Johnson, J., joined.


O P I N I O N 



 I join only the Court's judgment and write separately to express concern about
what I perceive to be unfair criticism of the forensic-science community and a limitation
on the use of forensic testimony that is far too narrow.

 The majority suggests that Appellant's right to confront the witnesses against him
was violated when the original analyst was not called to the stand at Appellant's
insistence because there is an absence of evidence showing that the "tester did not
fabricate the results" and the analyst's report claimed only to have conformed with the
required safeguards. Maj. Op. at 6. The opinion further states: 

Without having the testimony of the analyst who actually performed the
tests, or at least one who observed their execution, the defendant has no
way to explore the types of corruption and missteps the Confrontation
Clause was designed to protect against.


Id. Although I believe that Appellant's confrontation right was violated in this case, the
majority unfairly suggests that an unavailable analyst is an untrustworthy analyst. I
disagree. It is important for a criminal defendant to be able to cross-examine an analyst
who sponsors a report that inculpates the defendant and to have the opportunity to
question an analyst about why he or she is no longer employed at the laboratory, but there
may be other important evidentiary considerations to take into account. And the
suggestion that scientists in the forensic-science community are untrustworthy merely
because they are unavailable to testify, when there is no evidence to support that position,
undermines confidence in a profession that is governed by rigorous protocols and
certification procedures.

 Also, I would suggest a broader reading of Bullcoming--one that might allow, for
example, a second analyst, with an independent analysis, opinion, or judgment, to testify
to results of laboratory testing depending on the circumstances of the analysis and the
definition of "analyst" or "reviewer." If the State can produce "another" who may have
developed his or her own separate conclusion based on data supplied through testing (i.e.,
particular "testing" is really performed through machinery and analysts develop opinions
from that data), I see no reason why that witness should be denied an opportunity to
testify. If you have an independent analysis based on specific data that would be the same
for each analyst, how much personal observation is required by the second analyst before
he can testify?

 With these questions, I concur in the Court's judgment.

 Hervey, J.

Filed: June 26, 2013


Publish